IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Beulyta Doyle, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Michael J. Astrue, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No. 6:10-46-KFM<br><br>**O R D E R** |

This case is before the court for a final order pursuant to Local Rule 73 and Title 28, United States Code, Section 636(c). The case was referred to this court for disposition by order of the Honorable Henry F. Floyd, United States District Judge, filed February 2, 2010.

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## **ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed a previous application for disability insurance benefits ("DIB") on July 3, 2003, alleging that she became unable to work on February 3, 1999. This claim was denied through the hearing level, with the decision of the administrative law judge ("ALJ") on November 26, 2004. That decision was not appealed.

The plaintiff filed her current application for DIB on December 21, 2004, alleging that she became unable to work on November 17, 2004 (later amended to

January 17, 2002). The application was denied initially and on reconsideration by the Social Security Administration. On October 29, 2005, the plaintiff requested a hearing. The administrative law judge before whom the plaintiff, her attorney, and a vocational expert appeared on June 28, 2006, found that the plaintiff was not under a disability as of December 31, 2004, the date last insured. The ALJ's finding became the final decision of the Commissioner when it was approved by the Appeals Council on August 24, 2007. The plaintiff then filed an action for judicial review (C.A. 6:07-3497-HFF-WMC).

In a report filed December 1, 2008, then-United States Magistrate Judge William M. Catoe recommended that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), and the case be remanded for further proceedings. This recommendation was adopted by the Honorable Henry F. Floyd, United States District Judge, on February 19, 2009, and the case was remanded to the Commissioner.

A supplemental hearing was held on October 7, 2009. The plaintiff, her attorney, and a vocational expert appeared at the hearing. On November 6, 2009, the ALJ issued his decision finding that the period through November 27, 2004, was *res judicata* based on the prior 2004 decision, and the only time period in question was November 27, 2004, through December 31, 2004, the plaintiff's date last insured. The ALJ found that the plaintiff was not under a disability as defined in the Social Security Act, as amended, during that time period. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2004.
>
> (2) The claimant did not engage in substantial gainful activity during the period of November 27, 2004 through her date last insured of December 31, 2004 (20 CFR 404.1571 *et seq*.).

(3)     Through the date last insured, the claimant had the following severe impairments: status post diskectomy and decompression with fusion at C4-5 and C5-6; and a right upper extremity injury (20 CFR 404.1520(c)).

(4)     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5)     After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: having a sit-stand option at will; no climbing ladders, scaffolds, or ropes; no balancing; stooping, bending or crawling; no repetitive work with her upper extremities (not constantly, but frequently); and avoiding hazardous environments (such as unprotected heights and moving machinery).

(6)     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7)     The claimant was born on July 14, 1961 and was 43 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9)     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

(10)    Through the [date] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

(11)    The claimant was not under a disability, as defined in the Social Security Act, at any time from November 27, 2004 through December 31, 2004, the date last insured (20 CFR 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability

4

to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there

is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

***Prior to December 31, 2004***

Dr. William E. Wilson treated the plaintiff with medication, physical therapy, and nerve-block injections for impingement syndrome of the right shoulder in 1997-2000 (Tr. 184-87).  The plaintiff underwent arthroscopic surgery for right-shoulder-impingement syndrome in February 2000 on Dr. Wilson's recommendation (Tr. 94-97, 182, 185).  She reported no improvement from the surgery (Tr.101-07, 177-80).  In April 2001, she underwent three cervical epidural steroid injections for radicular pain after an MRI showed a mild bulging disc without herniation at C5-6 (Tr. 89-93).  She reported only slight improvement from the injections (Tr. 99).

On January 17, 2002, Dr. Wilson performed a C4-5/C5-6 cervical discectomy and fusion on the plaintiff after a myelogram showed compression of the thecal sac at C3-4 through C5-6 (Tr. 118-20, 125-29).  Before the surgery, Dr. Wilson noted that the plaintiff had persistent pain radiating from her neck into her right shoulder, arm, and hand, and had failed conservative treatment with medication, injections, and physical therapy (Tr. 116-17).

In April 2002, Dr. Wilson noted that the plaintiff's arm pain was "significantly improved" after a course of physical therapy, but that she complained of discomfort in the right parascapular and trapezius area, and pain with driving and neck rotation.  Examination revealed no motor deficits, decreased tenderness in the paraspinal muscles, and improved range of motion (Tr. 174).

In January 2003, Dr. Gibbs, the plaintiff's primary care physician, referred the plaintiff to Dr. Wilson to evaluate complaints of low-back pain.  The plaintiff complained of pain radiating from her lower back to her left leg and foot since a motor vehicle accident in

6

September 2001. Dr. Wilson found she had a nonantalgic gait, full strength and normal sensory function in the lower extremities, and limited range of motion in the back (Tr. 172). Dr. Wilson ordered an MRI of the plaintiff's lumbar spine, which was interpreted as normal (Tr. 114, 172).

The plaintiff returned to Dr. Wilson with complaints of pain in the right neck, shoulder, arm, and hand in April 2003 (Tr. 171). After finding no motor deficits in the upper extremities and multiple trigger points, Dr. Wilson prescribed physical therapy and ordered an MRI, which showed a small disc protrusion at C3-4 and spurring at C4-5 and C5-6 without significant evidence of central-canal or neural-foraminal narrowing (Tr. 112-13, 171). Dr. Wilson administered a nerve block injection in the plaintiff's right shoulder in June 2003, when she presented with complaints of continued right neck and shoulder pain. The plaintiff reported no relief from the injection (Tr. 170).

On November 3, 2003, Dr. Faaberg, a pain-management specialist, noted that the plaintiff was not taking Ultracet but had started using an RS Medical stimulator. He found her examination unchanged and use of her upper extremities significantly improved and stated that he had "little more to offer her" (Tr. 154). The plaintiff returned to Dr. Faaberg later in November, reporting some improvement in her right arm pain. With regard to employment, Dr. Faaberg stated that the plaintiff "may be a candidate for vocational rehabilitation but repetitive use of the upper extremities on a long-term basis is not possible" (Tr. 153). When Dr. Faaberg examined the plaintiff on December 30, 2003, she complained of continuing neck pain. He found she had tenderness, tightness, and reduced range of motion in the cervical spine, and administered a cervical facet-joint injection (Tr. 152).

The plaintiff returned to Dr. Wilson concerning neck and shoulder pain in March 2004, stating that physical therapy had been helpful but had not relieved her symptoms. Dr. Wilson found tenderness in the right shoulder-trapezius area, a positive

impingement sign, good range of motion, and some weakness. He recommended continued treatment with Dr. Faaberg (Tr. Tr. 169).

Dr. James D. Dalton Jr., examined the plaintiff at Dr. Wilson's request in March 2004, and found she had no coordination deficits, full strength with shoulder rotation and abduction, and mildly positive impingement signs. Dr. Dalton injected the plaintiff's right shoulder and diagnosed right shoulder pain of unclear etiology (Tr. 168). In April 2004, Dr. Dalton noted that an MRI of the plaintiff's right shoulder looked "relatively normal" and told her that her problem was not surgically correctable (Tr. 167).

On August 26, 2004, the plaintiff reported an increase in right-sided radicular pain to Dr. Faaberg. Dr. Faaberg found the plaintiff had "myofascial findings" in the upper back and periscapular muscles, and sensory changes in the right arm. He administered an epidural-steroid injection (Tr. 150). Dr. Faaberg administered another epidural-steroid injection to the plaintiff in November 2004, noting she had responded to injections in the past (Tr. 149). When the plaintiff reported continuing neck pain to Dr. Faasberg on December 13, 2004, he noted she had a "generalized myofascial condition in the upper back and posterior cervical area." He stated that the plaintiff had reached maximum medical improvement and recommended a cervical support pillow to help her sleep, applying heat, and exercise, and no further physical therapy or injections (Tr. 148).

*After December 31, 2004*

In July 2005, Dr. Wilson found the plaintiff had mildly to moderately decreased range of cervical motion, tenderness in the neck and trapezius muscles, "some mild impingment," and intact rotator cuff strength. He diagnosed chronic neck and bilateral shoulder pain and prescribed medication (Tr. 167).

In August 2005, the plaintiff complained to Dr. Wilson of pain in the left side of her neck radiating to her left arm and hand. Dr. Wilson recommended epidural steroid

injections. In September 2005, after two injections, the plaintiff complained of continuing intermittent pain in the right arm and related she had been unable to complete a vocational rehabilitation test because of pain in her right arm. Dr. Wilson found no motor deficits throughout the upper extremities (Tr. 166).

Dr. J. Edward Nolan treated the plaintiff in five appointments between August 31, 2005, and March 7, 2006 (Tr. 196-207). The plaintiff complained of constant pain in her neck and arms, aggravated by housework and lifting, and stated that injections had provided good relief in the past (Tr. 200). Dr. Nolan noted that the plaintiff's medications consisted of Zelnorm (indicated for irritable bowel syndrome), Thiazide (indicated for hypertension), and Verelan (indicated for hypertension). His examination findings included normal coordination and muscle tone; grossly intact sensation in all extremities; pain in the C5 nerve root distribution; decreased sensation to light touch in all right cervical dermatones; absent right brachio-radialis reflex; grossly intact motor function in the upper extremities, with decreased (4-/5) strength in the C6 myotome and decreased (4/5) strength in the right lower extremity; and moderate radiculopathy in the C5-6 nerve-root distribution. Dr. Nolan treated the plaintiff with epidural steroid injections, cervical facet joint injections, and a subacromial bursa injection (Tr. 196-200).

***Medical Opinions***

In April 2002, Dr. Wilson stated that he felt the plaintiff could "do sedentary or clerical work [with limited] flexion/extension of the neck and limit[ed] lifting" (Tr. 174).

In June 2002, Dr. Wilson assigned the plaintiff a 10% whole person impairment related to the cervical spine and stated that her work restrictions consisted of "sedentary clerical work w/ ten pound maximum lifting and avoid repetitive overhead activity" (Tr. 173).

9

Dr. Joseph Gonzalez, a state agency physician, assessed the plaintiff's residual functional capacity in April 2005 (Tr. 155-62). Dr. Gonzalez concluded that the plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday (Tr. 156). He stated that the plaintiff's condition also precluded frequent, overhead use of the upper extremities, "infrequent hard pedals" with the left lower extremity, and more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 156-57).

Dr. Jean V. Smolka, a state agency physician, assessed the plaintiff's residual functional capacity in September 2005 (Tr. 188-95). Dr. Smolka concluded that the plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday (Tr. 189). Dr. Smolka stated that the plaintiff was limited to occasional overhead reaching with the upper extremities and occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 156-57).

In responses to a questionnaire completed in June 2006, Dr. Faaberg indicated that the plaintiff was incapable of full-time work prior to December 31, 2004, and that she would have missed more than four days of work per month and required frequent breaks during the workday had she attempted to work before that date. Dr. Faaberg also indicated that the plaintiff's belief that she needed to rest and/or lie down after 20-to-30 minutes of light activity was reasonable (Tr. 208-09).

*2006 Hearing Testimony*

At the hearing on June 28, 2006, the plaintiff testified that her condition had not changed significantly since January 2002 (Tr. 225). She testified that her 2002 neck surgery "helped a little bit," but that she still had constant neck and right-arm pain (Tr. 225-27). She testified that she could not reach overhead and had numbness and decreased grip strength in her right hand (Tr. 227-28). She stated that she could stand for 20 minutes and

sit for 30 minutes, that she needed to lie down throughout the day, and that she slept only three-or-four hours per night (Tr. 228-32).

The ALJ asked Arthur F. Schmitt, Ph.D., a vocational expert, to consider a person of the plaintiff's age, education, and work experience who could perform sedentary work with a sit/stand option; could not climb, balance, stoop, bend, kneel crouch, or crawl; could only occasionally perform overhead work; could not perform repetitive work with one arm; and could not be exposed to hazardous conditions such as unprotected heights (Tr. 233). Dr. Schmitt testified that such a person could perform the unskilled sedentary jobs of surveillance system monitor and telephone quotation clerk (Tr. 234).

*2009 Supplemental Hearing Testimony*

On remand from the district court, the plaintiff testified at the October 2009 supplemental hearing before the ALJ (Tr. 658). At the beginning of the hearing, the ALJ questioned the plaintiff about her testimony from the 2004 hearing on her earlier application. The plaintiff had stated that she experienced improvement in March 2004, and she did not claim disability after this date (Tr. 660-61). The plaintiff stated that she did not recall making this statement (Tr. 661). The plaintiff's attorney questioned her concerning her symptoms since June 2006. The plaintiff described pain in her neck and radiating pain in her arms and hands (Tr. 663-65). She experienced pain when attempting to perform household chores or when sitting. She described her pain as up to a nine on a scale of zero to ten (Tr. 665). She was unable to bathe her granddaughter or focus adequately on tasks (Tr. 668-69).

## **ANALYSIS**

The plaintiff was 43 years old on December 31, 2004, when she was last insured for benefits (Tr. 50). She has a high school education and has worked as a rug braider and spring winder operator (Tr. 65, 71). The plaintiff alleges disability commencing

11

January 17, 2002. As discussed above, this case was remanded to the ALJ by the district court because of errors in considering the combined effect of the plaintiff's impairments and in evaluating the plaintiff's credibility. Upon remand, the ALJ gave *res judicata* effect to the 2004 ALJ decision on her earlier application for benefits. In that prior decision, the ALJ found that the plaintiff was not disabled between January 17, 2002, and the date of that decision, November 26, 2004 (Tr. 253-63).[1] Accordingly, the ALJ in the instant case considered only the period between November 27, 2004, and December 31, 2004, the plaintiff's date last insured for Title II purposes, finding that *res judicata* applied to the time period of January 17, 2002, to November 26, 2004. The plaintiff argues that the ALJ erred by 1) giving *res judicata* effect to the 2004 ALJ decision; 2) failing to properly consider her impairments in combination as required by the remand order; and 3) failing to properly assess her credibility as required by the remand order.

***Res Judicata***

In her reply brief, the plaintiff argues that the ALJ erred in giving the 2004 ALJ decision *res judicata* effect. This court disagrees. Title 42, United States Code, Section 405(h), provides that findings by the Commissioner after a hearing shall be binding on all individuals party to the hearing and shall not be reviewed except as explicitly provided in the Act. Where an ALJ's decision has become the final decision of the Commissioner, "*[r]es judicata* bars attempts to relitigate the same claim." *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 475 (4th Cir. 1999); *see also Lively v. Sec'y of Health and Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987) (noting that "*res judicata* prevents reappraisal of both the

---

[1] In the 2004 decision, the ALJ noted that the plaintiff first alleged she became disabled on February 3, 1999; however, prior to the hearing, the plaintiff amended her claim to request a closed period of disability from January 17, 2002, through March 31, 2004 (Tr. 253). The ALJ found that the plaintiff was not under a disability as defined in the Social Security Act at any time through the date of that decision, November 26, 2004 (Tr. 263).

12

[Commissioner's] findings and his decision in Social Security cases that have become final")[2]; *Shrader v. Harris*, 631 F.2d 297, 300-01 (4th Cir. 1980) (noting incorporation of the doctrine of *res judicata* in the Commissioner's regulations); 20 C.F.R. § 404.957(c)(1).

"To the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion apply with full force." *Albright*, 174 F.3d at 476 n.4. Here, the ALJ in the 2004 decision found that the plaintiff was not disabled between January 17, 2002, and the date of that decision, November 26, 2004. That decision was not appealed. Accordingly, the ALJ in the decision now before this court found that *res judicata* applied, and that time period was no longer at issue. The plaintiff argues that "because her initial claim alleging disability as of 1999 is not the same as her second claim alleging disability as of 2002," *res judicata* should not apply. However, the plaintiff actually amended her onset date in the prior claim from February 3, 1999, to request a closed period of disability beginning January 17, 2002, the exact onset date alleged here (Tr. 240, 253).

In support of this argument, the plaintiff cites *Albright*, 174 F.3d at 476, in which the court stated, "*Res judicata* bars attempts to re-litigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in

---

[2] In *Lively*, an ALJ found the plaintiff could perform light work and was not disabled under the Medical-Vocational Guidelines ("the Grids"). Two weeks after the decision, the plaintiff turned 55 years old. Under the Grids, a person of the plaintiff's educational and vocational background who is limited to light work and is 55 years of age or older is considered disabled. In a later application, a second ALJ concluded the plaintiff could perform medium work. The Fourth Circuit Court of Appeals concluded that "[i]t is utterly inconceivable that his condition so improved in two weeks as to enable him to perform medium work. Principles of finality and fundamental fairness . . . indicate the Secretary must shoulder the burden of demonstrating that the claimant's condition had improved sufficiently to indicate that the claimant was capable of performing medium work." 820 F.2d. at 1392.

13

1994." However, the issue confronted in *Albright*[3] was different than the one here. Albright's claim related to a time period subsequent to the adjudication of his previous claim. 174 F.3d at 474. In contrast, here, the time period between January 17, 2002, and November 26, 2004, was specifically considered in the 2004 decision, and the same parties, material facts, and issues were involved in that prior final decision. Thus, the ALJ's findings in the 2004 decision with regard to that time period were entitled to *res judicata* effect, and the ALJ did not err in so finding (Tr. 253-63).

### *Combined Impairments*

As discussed above, this case involves an approximately one-month period of time between November 27, 2004, and December 31, 2004. The ALJ found the plaintiff had the following severe impairments: "status post diskectomy and compression with fusion at C4-5 and C5-6; and a right upper extremity injury" (Tr. 243). In considering the November 27, 2004, to December 31, 2004, time period, the ALJ gave significant weight to the findings in the prior ALJ decision with regard to the time period through November 26,

---

[3]On May 28, 1992, an ALJ found that Albright's disability claim failed at the second step of the sequential evaluation process. In a later claim concerning Albright's condition from May 29, 1992, onward, the second ALJ concluded that, absent new and material evidence regarding the severity of the alleged impairment, Albright's claims must be again denied. The district court concluded, and the Fourth Circuit Court of Appeals affirmed, that circuit precedent in *Lively*, 820 F.2d. 1391 (4th Cir. 1987), did not support such a conclusion. *Albright*, 174 F.3d at 477. The court noted:

> The logic so evident in *Lively*, however, applies with nowhere near the force in Albright's situation. Although we might state with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, we would grow ever less confident as the timeframe expands. Where, as here, the relevant period exceeds three years, our swagger becomes barely discernible. We think it imprudent to pronounce, as a matter of law, that Albright's ability to perform in the workplace could not have diminished between May 28,1992 (when his initial claim was decided), and June 30, 1995 (when his insured status expired).

*Id.* (footnote omitted).

2004 (Tr. 246) (citing AR 00-1(4), 2000 WL 43774).[4]  The ALJ found that "the claimant had the residual functional capacity to perform sedentary work with the following additional limitations: having a sit-stand option at will; no climbing ladders, scaffolds, or ropes; no balancing, stooping, bending or crawling; no repetitive work with her upper extremities (not constantly, but frequently); and avoiding hazardous environments (such as unprotected

---

[4] In Acquiescence Ruling 00-1(4), the Social Security Administration explained how it would apply the decision in *Albright*, 174 F.3d 473.  The ruling states as follows:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.
>
> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in *Lively*. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in *Albright*. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

2000 WL 43774, at *4.  Considering the above factors, the ALJ found that the prior decision should be accorded significant weight as to the plaintiff's impairments between November 27, 2004, and December 31, 2004, "due to very little passage in time from the period covered in the prior decision and this decision, coupled with a lack of significant changes in the claimant's condition' (Tr. 246).

15

heights and moving machinery." Lastly, the ALJ found the plaintiff was unable to return to her past relevant work but was able to perform other work existing in significant numbers in the national economy (Tr. 246-57). Relying on the testimony of the vocational expert, the ALJ noted the representative occupations of surveillance systems monitor, telephone quotation clerk, and weight inspector (Tr. 247, 669-73).

The plaintiff argues that the ALJ failed to properly consider her impairments in combination. On remand from the district court, the ALJ was instructed to evaluate the combined effect of the plaintiff's impairments and whether the impairments equaled the requirements of a listed impairment at step three of sequential evaluation process. *See* 20 C.F.R. § 416.920(d). In a disability case, the combined effect of all a claimant's impairments must be considered without regard to whether any such impairment, if considered separately, would be sufficiently disabling. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* However, it is the plaintiff's burden to present evidence that his condition meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986).

This court finds that the ALJ complied with the remand order and appropriately considered the plaintiff's impairments in combination at step three. The ALJ specifically considered Listing 1.04, Disorders of the Spine (Tr. 243-44). The ALJ noted the plaintiff underwent a cervical fusion in 2002, and "an MRI scan revealed muscle strain and mild rotator cuff tendinopathy in her right upper extremity with no evidence of tearing" (Tr. 243; *see also* Tr. 94). The ALJ also addressed the treatment notes of the plaintiff's treating

pain specialist, Dr. Faaberg, which were consistent with an ability to perform a limited range of work activity (Tr. 243, 245 (citing Tr. 108-32, 148-54)). The ALJ noted that after an epidural-steroid injection by Dr. Faaberg on November 29, 2004, the plaintiff's pain significantly improved. By December 13, 2004, Dr. Faaberg concluded that despite having some recurring neck and shoulder pain, the plaintiff was at maximum medical improvement. He recommended that she exercise and use heat and that she also use a cervical support pillow to help her sleep. He recommended no further physical therapy or injections at that time (Tr. 243, citing Tr. 148). Relying on the MRI scan of the plaintiff's shoulder and the treatment records of Dr. Faaberg, the ALJ concluded that the combined effect of the plaintiff's impairments did not meet or equal the requirements of a listed impairment: "[T]he evidence of record reveals that during the period in question, the claimant had solid fusions with few clinical findings upon examination and no need for additional pain management" (Tr. 244). Based upon the foregoing, this allegation of error is without merit.

***Credibility***

The plaintiff further argues that the ALJ failed to properly consider her credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

17

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

Here, the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, he further found that the plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 245). The ALJ articulated his reasoning, and his factual findings deserve deference under the substantial evidence standard of review. 42 U.S.C. § 405(g).

The ALJ noted that the plaintiff "offered little testimony regarding her condition prior to her date last insured" (Tr. 245). In the October 2009 supplemental hearing, the plaintiff's attorney asked questions concerning the plaintiff's present level of functioning (*see* Tr. 665). The ALJ expressed concern about the relevance of this testimony: "Counsel, I know you're focusing on how she is now, but what I have here is a Title II only case, and the date last insured is December 31, 2004." *Id.* It was therefore reasonable for the ALJ to find that the plaintiff's hearing testimony was not relevant to the period of time at issue in this case.

The ALJ also found that the plaintiff's "current testimony is inconsistent with her prior hearing testimony" (Tr. 245). In the hearing on her previous application for benefits, the plaintiff testified that her condition improved and she was no longer disabled as of March 31, 2004 (Tr. 245, 253). The plaintiff testified in the October 2009 hearing before the present ALJ that she did not remember making such a statement (Tr. 661). She instead claimed to be disabled from 2002 onward.

The plaintiff argues that the ALJ's reliance on her "admitted difficulty in recalling what transpired during a hearing several years ago" was in error (pl. brief 14). To the extent the ALJ questioned the plaintiff's credibility because her 2009 testimony was inconsistent with her testimony before the prior ALJ, this inconsistency was central to the

19

plaintiff's claimed inability to work, and it undermined her credibility was a witness. "One strong indication of the credibility of an individual's statements is their consistency." SSR 96-7p, 1996 WL 374186, at *5. Further, as argued by the Commissioner, to the extent the ALJ questioned the plaintiff's credibility on the further grounds that she claimed to not remember her testimony, this was also a reasonable inference for the ALJ to make. This was not a tangential or immaterial issue: it was reasonable to expect the plaintiff to remember if she alleged that her disability ceased due to medical improvement.

The ALJ discussed the medical evidence and noted that the plaintiff's cervical pain resolved with her November 2004 injection, and she had few clinical findings upon examination. The ALJ further noted that in December 2004, Dr. Faaberg found the plaintiff was at maximum medical improvement and that she needed nothing more than heat, exercise, and a cervical support pillow in the future. The ALJ concluded that the plaintiff's "allegations of some neck pain and right arm limitations are well accommodated by the limitations for her to perform a limited range of sedentary work . . . through December 31, 2004" (Tr. 245).

Based upon the foregoing, this allegation of error is without merit.

## **CONCLUSION**

This court finds that the Commissioner's decision is based upon substantial evidence. Now, therefore, based upon the foregoing,

IT IS ORDERED that the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/Kevin F. McDonald
United States Magistrate Judge

February 18, 2011
Greenville, South Carolina